UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAITH HAVEN SENIOR CARE
CENTRE,

        Plaintiff,

                                          Case No. 13-CV-11557
vs.                                   HON. GEORGE CARAM STEEH

SEIU HEALTHCARE MICHIGAN,

        Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      Mara Stockard, a cook formerly employed by plaintiff nursing home, Faith Haven Senior Care Centre ("Faith Haven"), was terminated on May 25, 2012, pursuant to a progressive discipline policy after her fourth alleged violation of company rules. Her union, SEIU Healthcare Michigan ("Union"), brought a grievance on her behalf against her former employer alleging that her termination violated the collective bargaining agreement ("CBA") which provides that any discharge be for "just cause." Pursuant to the CBA, the grievance was submitted to arbitration. The arbitrator ruled that the discharge was not for "just cause," based on his finding that Faith Haven failed to prove that one of the four alleged infractions, wearing open toed shoes in the kitchen, was subject to discipline, and that Faith Haven did not provide Stockard with due process. Invoking § 301 of the Labor Management Arbitration Act, 29 U.S.C. § 185, Faith Haven filed a complaint here seeking to vacate the award. The Union filed a counterclaim seeking to have the arbitration award enforced. Cross-motions for summary judgment

-1-

are pending. Because the arbitrator arguably construed the CBA in deciding that Faith Haven lacked just cause to discharge Stockard, the arbitration award shall be affirmed. Oral argument in this matter had been scheduled for February 10, 2014, but upon further review of the parties' briefs, this matter shall be decided based on the written submissions pursuant to Local Rule 7.1(f)(2).

## I. BACKGROUND

Stockard began working for Faith Hill in 2008 as a dietary aide and subsequently was promoted to the position of cook. Stockard was disciplined four times beginning in late 2011 and culminating in her discharge on May 25, 2012. On December 27, 2011, Stockard arrived thirty-minutes late for her 5:30 a.m. shift which caused her to fail to serve breakfast to a patient on his way to dialysis. She then punched out thirty-minutes after her scheduled shift end. For this misconduct, Faith Haven issued her an oral warning charging her with a Group I, Rule 13 violation for "failure to perform job description satisfactorily, and according to established job description." (Doc. 21, Ex. C). On May 16, 2012, Stockard allegedly engaged in a loud and profane argument with a co-worker who happened to be her mother. On May 22, 2012, Faith Haven issued a written warning charging her with a Group II, Rule 2 violation for the altercation with her mother, for which immediate suspension and possible termination were possible consequences. (Doc. 21, Ex. D). At the arbitration hearing, Faith Haven supervisor Laura Shoop testified that she could not remember the events of May 16, 2012. (Arbitration Opinion at 6), and Stockard denied using any profanity. Id. at 9. On May 20, 2012, Stockard reported to work wearing flip flops and presenting a rash on her feet. After her supervisor pointed out the violation of the company's dress code, she

-2-

immediately borrowed shoes and socks from a coworker. For her dress code violation, Faith Haven issued a third step discipline by way of a written warning that she had violated Group 1, Rule 8. (Doc. 17, Ex. E). On May 22, 2012, Stockard failed to deliver snacks and failed to conduct prep work. (Doc. 17, Ex. F). During the arbitration process, Stockard admitted to these charges but claimed that extenuating circumstances, namely that the snacks were past their expiration date and all workers were behind in their work, justified her infractions. Finally, on May 23, 2012, Stockard failed to clean her work area at the end of her shift. Id. During arbitration, Stockard admitted to this infraction but claimed that mitigating circumstances excused her lapse. On May 25, 2012, Faith Haven issued its fourth and final discipline of Stockard for the May 22 and 23, 2012 violations, and discharged her.

On the same date, the Union filed a grievance challenging her termination. Faith Hill denied that grievance and the Union appealed. The matter was brought before Arbitration on January 24, 2013. In his written opinion, the arbitrator ruled that discharge under the four-level progressive discipline was not warranted because the incident involving the dress code violation was such a minor infraction, no disciplinary action should have been taken. Absent that discipline, the arbitrator ruled that discharge for progressive disciple was not warranted as the four-level process had not been met. The arbitrator also ruled that discharge was also inappropriate based on certain procedural infirmities.

The CBA covering dietary aides and cooks sets forth several provisions that are relevant here. Section 4.1 provides:

> Section 4.1 The Employer retains the exclusive right to manage the facility; to direct, control and schedule its operations and work force and to make any and all decisions affecting the business, whether or not specifically mentioned herein. Such prerogatives, authority, and functions shall include but are not limited to the sole and exclusive right to:
>
> 1. Hire, promote, demote, layoff, assign, transfer, suspend, discharge or discipline employees for just cause.
> . . .
> 12. Promulgate, post and enforce reasonable rules and regulations governing the conduct and acts of employees during work hours.

Section 11.2 provides that an "[e]mployee may not be disciplined, suspended or discharged except for just cause." Section 11.3 sets forth the progressive discipline policy. It provides:

> Section 11.3 The type of reasonable penalty imposed in any instance depends on the nature of seriousness of the offense involved. Discipline may consist of four written types:
>
> 1. Oral Warning
> 2. Written Warning
> 3. Final Written Warning or Suspension
> 4. Discharge

Section 19.11 provides that "[t]he arbitrator shall have no power to add to, subtract from, modify or amend any provisions of this Agreement."

Pursuant to the powers given to it in the CBA, Faith Haven has established certain Standards of Conduct, which are presented in writing and given to all employees. Those Standards set forth two Groups of Rules. Group I Rules normally involve a progressive discipline approach, while Group II Rules provide for possible immediate termination. Specifically, Group I Rules provide:

> Disciplinary action for violations of Group I rules will normally follow a progressive discipline approach. However, the Company may initiate discipline at a higher step depending on the severity and circumstances surrounding the incident. Progressive discipline involves four steps:

-4-

<u>Step one:</u> Verbal coaching. . .
<u>Step two:</u> Formal counseling . . .
<u>Step three:</u> Written warning: (. . . Probation and or suspension may also occur at this step).
<u>Step four:</u> Termination of employment.

(Doc. 17, Ex. B). Group I Rules set forth the following rules which Stockard is accused of violating:

8.  Failure to abide by the company's dress code.

13. Failure to perform job duties satisfactorily, and according to established job description.

<u>Id.</u> Group II Rules provide "[d]isciplinary action for Group II rules will normally involve immediate suspension without pay pending an investigation of the incident and if warranted, termination." <u>Id.</u> Group II Rules set forth the following provision which Stockard is accused of violating: "[t]hreatening, harassing, intimidating or abusing Company employees, residents or visitors, including verbal abuse and use of obscene language." <u>Id.</u> Although Group II Rule violations do not require progressive discipline, during arbitration proceedings, Faith Haven did not argue that discharge was proper short of the four-violations required under the progressive discipline policy. (Doc. 17, Ex. J).

## II. STANDARD OF LAW

This court's review of an arbitration award is extremely limited. <u>Truck Drivers Local No. 164 v. Allied Waste Sys., Inc.</u>, 512 F.3d 211, 216 (6th Cir. 2008). The Sixth Circuit has explained that in light of federal policy in favor of arbitration, "a court's review of an arbitrator's decision is very narrow; 'one of the narrowest standards of judicial review in all of American Jurisprudence.'" <u>Int'l Ass'n of Machinists & Aerospace Workers</u>

v. Tenn. Valley Auth., 155 F.3d 767, 771 (6th Cir. 1998) (quoting Lattimer-Stevens v. United Steelworkers, 913 F.2d 1166, 1169 (6th Cir. 1990)).  "As long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate."  United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 36 (1987) (quotations and citations omitted).  The standard of review of an arbitrator's decision is so liberal, that the Supreme Court has held, "if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision."  Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (quotations and citations omitted).  "Judicial review of a labor-arbitration decision pursuant to [a CBA] is very limited.  Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Id. at 509 (citing Misco, 484 U.S. at 36).

The Sixth Circuit has set forth a three-part test for reviewing a final and binding arbitration award.  Mich. Family Res. v. Serv. Employ. Int'l Union Local 517 M, 475 F.3d 746, 753 (6th Cir.) (en banc), cert. denied, 551 U.S. 1132 (2007). The standard requires the district court to consider three questions:

> (1) Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration;
>
> (2) Did the arbitrator commit fraud, have a conflict of interest, or otherwise act dishonestly in issuing the award; and
>
> (3) In resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

Id. The Sixth Circuit explained that so long as an arbitrator does not offend any of these factors, "judicial intervention should be resisted even though the arbitrator made 'serious,' 'improvident,' or 'silly' errors in resolving the merits of the dispute." Id. Under the onerous three-pronged test, only the most egregious awards may be vacated. Id. In fleshing out what the term "arguably construing" means, the Sixth Circuit explained that it requires only that "the arbitrator appeared to be engaged in interpretation" and that "consideration of the merits of a dispute is the rare exception, not the rule." Id. In Michigan Family Resources, the Sixth Circuit refused to vacate the arbitration award, despite its finding that the arbitrator made a legal error, because it was an error of interpretation of the contract. Id. at 756. The Sixth Circuit explained that the parties bargained for an arbitrator's construction and that bargain "must be respected even when time and further review show that the parties in the end have bargained for nothing more than error." Id.

### III. ANALYSIS

Faith Haven argues that the arbitrator's decision must be vacated because (1) the Union's grievance involved only her termination and thus, he should have considered the disciplinary violations cited in the May 25, 2012 citation only and not the dress code violation citation of May 22, 2012, (2) the CBA required mandatory discipline for any dress code violations, (3) there were no due process violations under the CBA or the common law, and (4) the arbitrator's award is contrary to public policy based on public health concerns.

1.     **Matters Properly Before the Arbitrator**

Faith Haven argues that the arbitrator improperly considered Stockard's dress code violation in deciding whether there was just cause for her termination. Faith Haven contends his analysis should have been limited to the final reason given for termination only, as set forth in the May 25, 2012 citation, on the grounds that she did not specifically grieve other violations. Faith Haven's argument lacks merit. Stockard's grievance challenged her discharge which necessarily required analysis of all the underlying disciplinary violations providing the basis for her discharge. Thus, the arbitrator did not err in considering the alleged dress code violation.

2.     **Dress Code Violation**

Faith Haven argues that discipline is mandatory for dress code violations and that the arbitrator erred in holding that no discipline was warranted for the incident involving Stockard arriving in flip flops and immediately changing when asked to do so. In support of this argument, Faith Haven relies on two cases which are inapposite. In SEIU Healthcare Mich. v. St. Mary's Acquisition Co., No. 09-13215, 2010 WL 2232218 (E.D. Mich. May 27, 2010), the district court vacated the arbitrator's award where the arbitrator found mitigating circumstances prevented the employer from discharging an employee for sleeping on the job when the collective bargaining agreement provided for mandatory termination in those circumstances. Faith Haven also relies on International Brotherhood of Electrical Workers, Local 429 v. Toshiba America, Inc., 879 F.2d 208 (6th Cir. 1988), where the court ruled the arbitrator erred in reinstating discharged workers where the collective bargaining agreement called for mandatory termination of workers who engaged in illegal walk-outs and further provided, "[a]ny disciplinary action,

-8-

including discharge taken as a result of a violation of [the no-strike clause] . . . shall not be altered or amended in the grievance and arbitration procedures, the sole issue for presentation to the arbitrator and decision by him being whether or not the employees engaged in conduct in violation of [the no-strike clause]." Id. at 210.

In contrast to the cases relied upon by Faith Haven, the CBA provision here does not unequivocally mandate discipline for dress code infractions. Instead, Section 11.3 of the CBA provides for discretionary discipline: "[t]he type of *reasonable* penalty imposed in any instance depends on the nature of the *seriousness* of the offense involved." (CBA at § 11.3) (emphasis added). Section 4.1 of the CBA authorizes Faith Haven to promulgate rules and regulations and set performance standards. Faith Haven's Group I Rules provide, "[d]isiplinary action for violation of Group I rules will *normally* follow a progressive discipline approach. However, the Company may initiate discipline at a higher step depending on the severity and circumstances surrounding the incident." Id. at 26 (emphasis added). An arguable interpretation of the term "normally," as used above, suggests that the employer maintains discretion as to whether or not to impose progressive discipline for Group I violations. Because the CBA and the Standard Code of Conduct provide the employer with some discretion as to the penalty to be imposed based on the "seriousness" of the offense, the arbitrator acted within his discretion when he determined that Stockard should not have been disciplined for wearing open toed shoes when she immediately changed into socks and closed shoed toes, borrowed from a coworker, when informed of the dress code violation. Even if this court were to disagree about the "seriousness" of the violation, it is not this court's role to second guess the arbitrator when the arbitrator is arguably construing the CBA.

In his opinion, the arbitrator states that because of his finding that Stockard's wearing of flip flops was not an offense subject to discipline, and that violation constituted one of four grievances justifying her termination, she must be reinstated. Specifically, he stated that his finding that wearing flip-flops was not an offense subject to discipline "creates a disciplinary gap which standing alone, is sufficient to overturn the discharge." (Arbitration Opinion at 17). During the arbitration proceedings, Faith Haven argued that discharge was warranted under the four-step progressive discipline policy. Having failed to argue that discharge might still be warranted even if less than four violations were proven, Faith Haven waived the argument, and the arbitrator did not err in failing to determine whether discharge would still be warranted based on the other three alleged violations. Because the arbitrator arguably construed the CBA when he determined that discharge was not warranted under the four-step progressive discipline policy because the minor dress code violation did not merit any disciplinary action, the court does not reach the question of whether alleged due process violations also support the award.

**3.      Public Policy**

Finally, the court considers whether the arbitrator's award is invalid on public policy grounds. In deciding whether an arbitrator's decision violates public policy, the court considers whether the arbitrator's construction of the CBA jeopardizes a "well defined and dominant" public policy, taking the facts as found by the arbitrator. Misco, 484 U.S. at 43. Here, Faith Haven argues that the public has a strong interest in maintaining nursing homes that comply with federal and state safety and health regulations, and that Stockard's conduct in wearing open toed shoes in the kitchen

conflicts with these policies. Certainly, the public has an interest in maintaining health and safety standards governing nursing facilities, but Faith Haven has not shown that the arbitrator's decision here undermines those policies where Stockard immediately corrected her behavior when asked to do so by management.

## IV. CONCLUSION

Because the arbitrator's decision arguably construed the CBA, the arbitration award hereby is AFFIRMED. Accordingly, the Union's motion to enforce the arbitration award and for summary judgment (Doc. 18) hereby is GRANTED. Faith Haven's motion for summary judgment and to vacate the arbitration award (Doc. 17) hereby is DENIED.

SO ORDERED.

Dated: January 21, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 21, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---